

1  Robert S. Green (State Bar No. 136183)
   **GREEN & JIGARJIAN LLP**
2  235 Pine Street, 15th Floor
   San Francisco, CA 94104
3  Telephone: (415) 477-6700
4  Facsimile: (415) 477-6710

5  William B. Federman
   **FEDERMAN & SHERWOOD**
6  120 N. Robinson, Suite 2720
7  Oklahoma City, OK 73102
   Telephone: (405) 235-1560
8  Facsimile: (405) 239-2112

9  Attorneys for Plaintiff
10

11                  **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
12

13  GREG SUTTERFIELD, DERIVATIVELY ON      )   Case No.
14  BEHALF OF NOMINAL DEFENDANT            )
    MICROMUSE, INC.,                       )   **SHAREHOLDERS DERIVATIVE**
15                                         )   **COMPLAINT**
                        Plaintiff,         )
16                                         )
17  v.                                     )
                                           )
18  LLOYD CARNEY, MICHAEL LUETKEMEYER; )
    GREGORY Q. BROWN; STEPHEN A. ALLOTT; )
19  DAVID A. WISE; DAVID C. SCHWAB,        )
    MICHAEL B. W. JACKSON; and             )
20  KATHLEEN WALLMAN;                      )
                                           )
21                      Defendants,        )
                                           )
22  and                                    )
23                                         )
    MICROMUSE, INC.,                       )
24                                         )
25  _____ Nominal Defendant. _____ )

26      Plaintiff Greg Sutterfield ("Sutterfield" or "Plaintiff"), by his attorney submits this

27  Derivative Complaint ("the Complaint") against Defendants named herein.

28

SHAREHOLDERS DERIVATIVE COMPLAINT                                            1

**NATURE OF THE ACTION**

1.      This is a Shareholder's Derivative Action brought for the benefit of Nominal Defendant, Micromuse, Inc. ("Micromuse" or the "Company") against Defendants Lloyd Carney ("Carney"), Michael Luetkemeyer ("Luetkemeyer"), Stephen A. Allott ("Allott"), Gregory Q. Brown ("Brown"), David A. Wise ("Wise"), David C. Schwab ("Schwab"), Michael E. W. Jackson ("Jackson") and Kathleen Wallman ("Wallman").

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a) in that Plaintiff, a United States citizen, is a citizen of a different state or country than Defendants, and the amount in controversy exceeds $75,000.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. Additionally, Defendants maintain their chief executive offices and principal place of business within this District.

4.      This action is not a collusive one designed to confer jurisdiction on a court which it would not otherwise have.

**PARTIES**

5.      Plaintiff Sutterfield, a citizen and resident of Oklahoma, is, and was, at all relevant times a shareholder of Nominal Defendant Micromuse.

6.      Nominal Defendant Micromuse is a Delaware corporation with its principal place of business located at 139 Townsend Street San Francisco, CA 94107. The Company develops, markets and supports a family of scalable, highly configurable, rapidly deployable software solutions that enable service and business assurance, which is the effective monitoring of the status of multiple devices and elements underlying an information technology (IT) service delivery infrastructure. These solutions help provide the continuous availability of IT-based services and businesses.

7.    (a)    Defendant Carney, a citizen and resident of California, has served as Micromuse's Chairman of the Board of Directors and Chief Executive Officer from July 2003 to the present.

(b)    Defendant Luetkemeyer, a citizen and resident of California, has served as Micromuse's Chief Financial Officer from October 2001 to the present.  He has been a Director of the Company since January 2003 and served as the Company's interim CEO from January 1, 2003 until July 2003.

(c)    Defendant Brown, citizen and resident of California, was Micromuse's Chairman of the Board and Chief Executive Officer from February 1999 until December 2002 and remains a member of the Company's Board of Directors.

(d)    Defendant Allott, a citizen and resident of California, was Micromuse's President and Chief Financial Officer from July 1998 until April 2001.

(e)    Defendant Wise, a citizen and resident of California, was Micromuse's Interim Chief Financial Officer from April 2001 until October 2001.

(f)    Defendant Schwab, a citizen and resident of California, has been a Director of the Company since 1996.

(g)    Defendant Jackson, a citizen and resident of the United Kingdom, has been a Director of the Company since 1998.

(h)    Defendant Wallman, a citizen and resident of Virginia, has been a Director of the Company since 1999.

8.    The Current Board of Directors consists of six (6) members, i.e, Carney, Schwab, Luetkemeyer, Brown, Jackson and Wallman.

9.    Because of the Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings

1    and committees thereof and via reports and other information provided to them in connection
2    therewith.

3        10.    Each of the above officers of Micromuse, by virtue of their high- level positions
4    with the Company, directly participated in the management of the Company, was directly
5    involved in the day-to-day operations of the Company at the highest levels and/or was privy to
6    confidential proprietary information concerning the Company and its business, operations,
7    products, growth, financial statements, and financial condition, as alleged herein. Such
8    Defendants were involved in drafting, producing, reviewing, disseminating, approving, ratifying
9    and/or recklessly permitting the dissemination of the false and misleading statements and
10   information alleged herein. Defendants were aware or recklessly disregarded, that the false and
11   misleading statements were being issued regarding the Company, and approved or ratified these
12   statements.

13       11.    As officers and controlling persons of a publicly-held company whose common
14   stock was, and is, registered with the Securities and Exchange Commission (the "SEC"), traded
15   on the NASDAQ National Market, and governed by the provisions of the federal securities laws,
16   the Defendants each had a duty to disseminate promptly, accurate and truthful information with
17   respect to the Company's financial condition and performance, growth, operations, financial
18   statements, business, products, markets, management, earnings and present and future business
19   prospects, and to correct any previously issued statements that had become materially
20   misleading or untrue. The Defendants violated these specific requirements and obligations.

21       12.    The Defendants participated in the drafting, preparation, and/or approval of the
22   various public reports and other communications complained of herein and were aware of, or
23   recklessly disregarded, the misstatements contained therein and omissions therefrom, and were
24   aware of their materially false and misleading nature. Because of their Board membership
25   and/or executive and managerial positions with Micromuse, each of the Defendants had access
26   to the adverse undisclosed information about Micromuse's business prospects and financial
27   condition and performance as particularized herein and knew (or recklessly disregarded) that

28

SHAREHOLDERS DERIVATIVE COMPLAINT                                                          4

1  these adverse facts rendered the positive representations made by or about Micromuse and its

2  business issued or adopted by the Company materially false and misleading.

3       13.     The Defendants, because of their positions of control and authority as officers

4  and/or directors of the Company, were able to and did control the content of the various SEC

5  filings, press releases and other public statements pertaining to the Company. Each Defendant

6  was provided with copies of the documents alleged herein to be misleading prior to or shortly

7  after their issuance and/or had the ability and opportunity to prevent their issuance or cause them

8  to be corrected. Accordingly, each of the Defendants is responsible for the accuracy of the

9  public reports and releases detailed herein.

10       14.     Each of the Defendants is liable for directly participating in and/or recklessly

11  permitting fraudulent schemes and courses of conduct alleged herein.  In addition, by reason of

12  their status as senior executive officers and directors, the Defendants had the power and

13  influence to cause Micromuse to engage in unlawful conduct or to prevent same.

14       15.     The Defendants, because of their positions with Micromuse, had the opportunity

15  to commit and/or the responsibility to prevent the fraudulent acts alleged herein, and were

16  responsible for the accuracy of public reports of Micromuse.

17       16.     As further alleged herein Micromuse's current Board of Directors is unable to

18  make an impartial determination as to whether to institute legal proceedings to redress the

19  wrongful conduct alleged herein because there is a substantial likelihood that a majority of its

20  members would be found liable for non-exculpated breaches of their fiduciary duties to the

21  Company and shareholders by participating or acquiescing in the wrongdoing alleged herein

22  and/or completely failing to perform their oversight duties to the Company, failing to oversee

23  the Company's compliance with legally mandated accounting and disclosure standards and

24  systemic failure to assure that a reasonable information and reporting system existed.

25  **SUBSTANTIVE ALLEGATIONS**

26       17.     Micromuse provides service-level management software. The Company's

27  Netcool suite of applications is used by managed network service providers, Internet service

28  providers, telecommunications firms and corporate enterprises nationwide.

SHAREHOLDERS DERIVATIVE COMPLAINT            5

18.     Throughout the Relevant Period (October 24, 2000 through December 30, 2003), Defendants issued numerous positive statements and filed quarterly reports with the SEC which described the Company's increasing financial performance. These statements were materially false and misleading because they failed to disclose and/or misrepresented the following adverse facts, among others: (i) that the Company had improperly accounted for the timing of certain accrued expenses and the recognition of certain other expenses; (ii) that the Company lacked adequate internal controls and was therefore unable to ascertain the true financial condition of the Company; and (iii) that as a result, the values of the Company's net income and financial results were materially overstated at all relevant times.

19.     On December 30, 2003, the Company announced that it had opened an internal inquiry into its accounting which it expects will lead to a restatement of its financial statements for the past four years. The Company also announced that it would delay filing its Form 10-K for fiscal 2003 while it completes the inquiry and restatement process.

## I.      Materially False and Misleading Statements Issued During the Relevant Period

20.     The Relevant Period begins on October 24, 2000. On that day, Micromuse issued a press release announcing its financial results for the fourth quarter and year end of fiscal 2000, the period ending September 30, 2000. For the fiscal year, pro forma earnings, excluding the write-off of purchased in-process R & D and the amortization of goodwill and purchased intangible assets, were $15.0 million, or $0.38 per share on a diluted basis. Net loss for the year, which includes the write-off of purchased in-process R & D and the amortization of goodwill and purchased intangible assets, was $2.1 million or $0.06 per share. Defendant Brown commented on the Company's performance, stating, in pertinent part, as follows:

> Customer demand for our solutions is strong and the Netcool suite is becoming more widely accepted in the marketplace as the leading realtime fault management solution for a broad range of network service providers. Led by our success in data and Internet infrastructure, we see our solutions being adopted by incumbent telecommunications service providers, new entrants, voice and data, a range of managed service providers, cable, DSL and most recently wireless data. Our newer products, Netcool Impact (tm), Netcool Precision (tm) and Netcool Visionary (tm), which help our customers improve efficiency, profitability and competitiveness, all had record quarters.

SHAREHOLDERS DERIVATIVE COMPLAINT                                              6

1

2      21.      Micromuse's financial results for the fourth quarter and year end of fiscal 2000,

3  the period ending September 30, 2000, were repeated in the Company's Report on Form 10-K

4  filed with the SEC on or about December 29, 2000, which was signed by Defendants Allott,

5  Jackson, Schwab and Brown.

6      22.      On January 18, 2001, Micromuse issued a press release announcing its financial

7  results for the first quarter of fiscal 2001, the period ending December 31, 2000. For the quarter,

8  Defendants reported pro forma earnings, excluding the amortization of goodwill and purchased

9  intangible assets of $7.7 million, or $0.10 per share on a diluted basis. Net income for the

10  quarter, including the amortization of goodwill and purchased intangible assets, was $5.5

11  million or $0.07 per share on a diluted basis. Defendant Brown commented on the Company's

12  performance, stating, in pertinent part, as follows:

13          Led by the continued growth in IP and data traffic, and the growing acceptance of
            the Netcool(R) suite as the industry standard, demand for our solutions is
14          exceptionally strong. In addition to our core data markets, we saw increasing
            uptake of the Netcool suite by emerging broadband, optical fiber, high-speed
15          Internet access, and mobile wireless service providers. Our newer products not
            only had record quarters but also proved to be instrumental in driving sales for
16          our core Netcool/OMNIbus(TM) application. Customers across all our core
            markets are using Netcool applications to improve the overall efficiency of their
17          networks, increase profitability and ultimately
            compete successfully.
18

19

20      23.      Micromuse's financial results for the first quarter of fiscal 2001, the period

21  ending December 31, 2000, were repeated in the Company's Report on Form 10-Q filed with the

22  SEC on or about February 14, 2001, which was signed by Defendant Allott. In the notes to the

23  consolidated financial statements contained in the Form 10-Q, Defendants represented that:

24          The condensed consolidated financial statements are the unaudited historical
            financial statements of Micromuse Inc. and subsidiaries (the "Company") and
25          reflect all adjustments (consisting only of normal recurring adjustments) that, in
            the opinion of management, are necessary for a fair presentation of interim period
26          results.

27

28      24.      On April 18, 2001, Micromuse issued a press release announcing its financial

SHAREHOLDERS DERIVATIVE COMPLAINT                                                                  7

1   results for the second quarter of fiscal 2001, the period ending March 31, 2001. For the quarter,

2   Defendants reported pro forma earnings, excluding the amortization of goodwill and purchased

3   intangible assets, of $9.2 million, or $0.12 per share on a diluted basis. Net income for the

4   quarter, including the amortization of goodwill and purchased intangible assets, was $7.0

5   million or $0.09 per share on a diluted basis. Defendant Brown commented on the Company's

6   performance, stating, in pertinent part, as follows:

> As we focus on rapid value delivery to our customers, we are taking advantage of current market and economic conditions to accelerate penetration in our key target markets. Our outstanding performance in this environment demonstrates both the value that the Netcool(R) suite delivers to customers and its market position as the de facto industry standard. Customers across all our core markets are increasing the use of Netcool multi-vendor management applications to improve the overall efficiency, increase profitability and ultimately compete successfully.

12   25.    Micromuse's financial results for the second quarter of fiscal 2001, the period

13   ending March 31, 2001, were repeated in the Company's Report on Form 10-Q filed with the

14   SEC on or about May 14, 2001, which was signed by Defendants Brown and Wise. In the notes

15   to the consolidated financial statements contained in the Form 10-Q, Defendants represented

16   that:

> The condensed consolidated financial statements are the unaudited historical financial statements of Micromuse Inc. and subsidiaries (the "Company") and reflect all adjustments (consisting only of normal recurring adjustments) that, in the opinion of management, are necessary for a fair presentation of interim period results.

21   26.    On July 18, 2001, Micromuse issued a press release announcing its financial

22   results for the third quarter of fiscal 2001, the period ending June 30, 2001. For the quarter,

23   Defendants reported pro forma earnings, excluding the amortization of goodwill and purchased

24   intangible assets, of $10.2 million, or $0.13 per share on a diluted basis. Net income for the

25   quarter, including the amortization of goodwill and purchased intangible assets, was $7.9

26   million or $0.10 per share on a diluted basis. Defendant Brown commented on the Company's

27   performance, stating, in pertinent part, as follows:

> The clear value proposition of our Netcool solutions allowed us to increase our customer base significantly in Q3, while simultaneously enjoying a high level of

SHAREHOLDERS DERIVATIVE COMPLAINT                                                          8

repeat business from our existing customers and an outstanding win-loss rate against our competition. While we are very proud of these results, it has become clear that the economic climate is more challenging than ever and as a result we have reset our revenue targets. We plan to take advantage of this discontinuity by creating an even more efficient cost base, realigning our resources, and reinforcing and solidifying our market-leading position. We will capitalize on our strength in the market with an ongoing commitment to long-term financial growth, market share penetration, and continued focus on shareholder value and customer satisfaction.

27.     Micromuse's financial results for the third quarter of fiscal 2001, the period ending June 30, 2001, were repeated in the Company's Report on Form 10-Q filed with the SEC on or about August 14, 2001, which was signed by Defendants Brown and Wise. In the notes to the consolidated financial statements contained in the Form 10-Q, Defendants represented that:

The condensed consolidated financial statements are the unaudited historical financial statements of Micromuse Inc. and subsidiaries (the "Company") and reflect all adjustments (consisting only of normal recurring adjustments) that, in the opinion of management, are necessary for a fair presentation of interim period results.

28.     On October 24, 2001, Micromuse issued a press release announcing its financial results for the fourth quarter and year end of fiscal 2001, the period ending September 30, 2000. For the fiscal year, Defendants reported pro forma earnings of $30.1 million, or $0.38 per share. For the fiscal year, net income was $21.3 million or $0.27 per share. Defendant Brown commented on the Company's performance, stating, in pertinent part, as follows:

Fiscal 2001 clearly established the strength of our Netcool(R) brand, and Micromuse is now firmly recognized as the industry standard in our market space. Going forward, our blue chip customer base, superior technology, and consistent high competitive win rate are assets we will leverage as we focus on solving the next-generation issues facing today's providers of communications services and infrastructure.

29.     Micromuse's financial results for the fourth quarter and year end of fiscal 2001, the period ending September 30, 2001, were repeated in the Company's Report on Form 10-K filed with the SEC on or about December 21, 2001, which was signed by Defendants Luetkemeyer, Jackson, Schwab, Wallman and Brown.

SHAREHOLDERS DERIVATIVE COMPLAINT                                                                 9

30. On January 23, 2002, Micromuse issued a press release announcing its financial results for the first quarter of fiscal 2002, the period ending December 31, 2001. For the quarter, pro forma net income, excluding non-recurring executive recruitment costs and the amortization of goodwill and other intangible assets, was \$3.0 million or \$0.04 cents per share. Defendant Brown commented on the Company's performance, stating, in pertinent part, as follows:

> Our strong sales execution in fiscal Q1, spanning service provider and enterprise customers, demonstrates that the market continues to endorse Micromuse as the de facto standard for service and business assurance. In spite of the challenging economic environment, 70 new customers invested in the clear value proposition and rapid payback offered by the Netcool(R) suite. I am also very pleased that we delivered our 15th consecutive quarter of pro forma profitability to our shareholders, while simultaneously improving key balance sheet metrics including cash and days sales outstanding.

31. Micromuse's financial results for the first quarter of fiscal 2002, the period ending December 31, 2001, were repeated in the Company's Report on Form 10-Q filed with the SEC on or about February 13, 2002, which was signed by Defendants Brown and Luetkemeyer. In the notes to the consolidated financial statements contained in the Form 10-Q, Defendants represented that:

> The condensed consolidated financial statements are the unaudited historical financial statements of Micromuse Inc. and subsidiaries (the "Company") and reflect all adjustments (consisting only of normal recurring adjustments) that, in the opinion of management, are necessary for a fair presentation of interim period results.

32. On April 23, 2002, Micromuse issued a press release announcing its financial results for the second quarter of fiscal 2002, the period ending March 31, 2002. For the quarter, pro forma net income, excluding the amortization of goodwill and other intangible assets, was \$2.8 million or \$0.04 cents per share on a fully diluted basis. Net income for the quarter, including the amortization of goodwill and other intangible assets, was \$0.4 million or \$0.01 per share on a fully diluted basis. Defendant Brown commented on the Company's performance, stating, in pertinent part, as follows:

> Micromuse delivered another solid set of financial results in Q2, meeting guidance while increasing visibility and simultaneously improving several other performance metrics. Through industry-leading technology, diversified selling channels, and a powerful return on investment story, we continue to gain share

SHAREHOLDERS DERIVATIVE COMPLAINT                                                    10

and deepen penetration in our core markets, including Tier 1 carriers and Global 2000 enterprises.

33.     Micromuse's financial results for the second quarter of fiscal 2002, the period ending March 31, 2002, were repeated in the Company's Report on Form 10-Q filed with the SEC on or about May 14, 2002, which was signed by Defendants Brown and Luetkemeyer. In the notes to the consolidated financial statements contained in the Form 10-Q, Defendants represented that:

> The condensed consolidated financial statements are the unaudited historical financial statements of Micromuse Inc. and subsidiaries (the "Company") and reflect all adjustments (consisting only of normal recurring adjustments) that, in the opinion of management, are necessary for a fair presentation of interim period results.

34.     On July 29, 2002, Micromuse issued a press release announcing its financial results for the third quarter of fiscal 2002, the period ending June 30, 2002. For the quarter, pro forma net income, excluding the amortization of goodwill and other intangible assets, was $408,000 or $0.01 cent per share on a fully diluted basis. Net loss for the quarter, including the amortization of goodwill and other intangible assets, was $979,000 or a $0.01 loss per share on a fully diluted basis. Defendant Brown commented on the Company's performance, stating, in pertinent part, as follows:

> The June quarter was one of the most challenging we have faced yet as a company, with the telecom sector continuing to undergo unprecedented pressure. Given this, we are anticipating a sequential decline in revenue for the September quarter. At the same time, with 60% of our Q3 new customer wins coming from the enterprise sector, we are clearly seeing the benefits of ongoing, focused efforts to expand our enterprise presence. Furthermore, in Q3 we took the initiative to solidify our market leadership by extending an offer to acquire RiverSoft.

35.     Micromuse's financial results for the third quarter of fiscal 2002, the period ending June 30, 2002, were repeated in the Company's Report on Form 10-Q filed with the SEC on or about August 14, 2002, which was signed by Defendants Brown and Luetkemeyer. In the notes to the consolidated financial statements contained in the Form 10-Q, Defendants represented that:

> The condensed consolidated financial statements are the unaudited historical financial statements of Micromuse Inc. and subsidiaries (the "Company") and reflect all adjustments (consisting only of normal recurring adjustments) that, in the opinion of management, are necessary for a fair presentation of interim period results.

36.     On October 29, 2002, Micromuse issued a press release announcing its financial results for the fourth quarter and year end of fiscal 2002, the period ending September 30, 2002. For the fiscal year, Defendants reported a pro forma net loss, which specifically excluded the amortization and impairment of goodwill and other intangible assets, the write-off of purchased in-process research and development, restructuring charges, and executive recruitment costs, of $1.0 million or $0.01 per fully diluted share. GAAP net loss for the full fiscal year was $56.4 million, or $0.76 per fully diluted share. Defendant Brown commented on the Company's performance, stating, in pertinent part, as follows:

> In fiscal Q4, in the midst of a sustained spending downturn across the telecommunications industry, our intensifying focus on the enterprise sector enabled us to realize a 25% sequential increase in revenues from enterprise customers. At the same time, we clearly demonstrated our ability to execute on the cost side, bringing pro forma operating expenses down and preserving cash even as we successfully absorbed and integrated the RiverSoft acquisition. As we enter our new fiscal year, our industry-leading Netcool(R) brand, blue-chip customer base, global partnerships, and unparalleled technology will all be instrumental in helping us achieve our long-term growth and financial goals.

37.     Micromuse's financial results for the fourth quarter and year end of fiscal 2002, the period ending September 30, 2002, were repeated in the Company's Report on Form 10-K filed with the SEC on or about December 23, 2002, which was signed by Defendants Luetkemeyer, Jackson, Schwab, Wallman and Brown, among others.

38.     On January 21, 2003, Micromuse issued a press release announcing its financial results for the first quarter of fiscal 2003, the period ending December 31, 2002. For the quarter, pro forma net loss, which specifically excludes restructuring costs, purchased in-process research and development, and amortization of intangible assets, was $2.3 million or $0.03 per share. Defendant Luetkemeyer commented on the Company's performance, stating, in pertinent part, as follows:

1
2
3
4

> Fiscal Ql was a strong quarter for Micromuse by virtually any measure. In addition to reporting Ql results that exceed current First Call consensus revenue and pro forma earnings estimates, we also built cash, increased deferred revenues, improved visibility, and strengthened our pipeline. Our deepening traction in the enterprise market, increasing sales activity in the telecom sector, targeted acquisitions, and continuing expansion of the Netcool suite are providing the momentum to accelerate our return to profitability.

5       39.    Micromuse's financial results for the first quarter of fiscal 2003, the period

6    ending December 31, 2002, were repeated in the Company's Report on Form 10-Q filed with the

7    SEC on or about February 13, 2003, which was signed by defendant Luetkemeyer. In the notes

8    to the consolidated financial statements contained in the Form 10-Q, defendants represented

9    that:

10
11
12

> The condensed consolidated financial statements are the unaudited historical financial statements of Micromuse, Inc. and subsidiaries (the "Company") and reflect all adjustments (consisting only of normal recurring adjustments) that, in the opinion of management, are necessary for a fair presentation of interim period results.

13

14       40.    On April 23, 2003, Micromuse issued a press release announcing its financial

15    results for the second quarter of fiscal 2003, the period ending March 31, 2003. For the quarter,

16    pro forma net income, which specifically excludes the amortization of intangible assets, was

17    $2.5 million or $0.03 per fully-diluted share. Net income on a GAAP basis for fiscal Q2 was

18    $991,000 or $0.01 per fully-diluted share. Defendant Luetkemeyer commented on the

19    Company's performance, stating, in pertinent part, as follows:

20
21
22
23

> I am very pleased that Micromuse returned to profitability on both a pro forma and a GAAP basis in fiscal Q2, while simultaneously delivering significant sequential increases in total revenue, license revenue, and cash. Enterprise, government, and service provider customers worldwide continue to invest in the Netcool suite in order to maximize revenues, minimize costs, and ensure customer loyalty through effective, realtime management of their IT infrastructures.

24

25       41.    Micromuse's financial results for the second quarter of fiscal 2003, the period

26    ending March 31, 2003, were repeated in the Company's Report on Form 10-Q filed with the

27    SEC on or about May 13, 2003, which was signed by Defendant Luetkemeyer. In the notes to

28    the consolidated financial statements contained in the Form 10-Q, Defendants represented that:

1  
2  
3  
4  

The condensed consolidated financial statements are the unaudited historical financial statements of Micromuse Inc. and subsidiaries (the "Company") and reflect all adjustments (consisting only of normal recurring adjustments) that, in the opinion of management, are necessary for a fair presentation of interim period results.

5  42.  On July 23, 2003, Micromuse issued a press release announcing its financial results

6  for the third quarter of fiscal 2003, the period ending June 30, 2003. For the quarter, pro forma

7  net income, which specifically excludes the amortization of intangible assets and other charges,

8  was $2.8 million or $0.04 per share. Net income on a GAAP basis for fiscal Q3 was $429,000 or

9  $0.01 per share. Defendant Luetkemeyer commented on the Company's performance, stating, in

10  pertinent part, as follows:

11  
12  
13  
14  
15  
16  

Fiscal Q3 marked our third consecutive quarter of revenue growth, improved profitability, and increasing cash and cash equivalents. This steady improvement in our fundamentals reflects a careful balance between disciplined financial management and selective investment in long-term growth engines. Key demand drivers in the quarter included strong uptake for products derived from the RiverSoft and Lumos acquisitions, increasing demand for our unique realtime business intelligence applications such as Netcool/Impact and Netcool/SLA Manager, and customer requirements to manage emerging technologies such as 3G wireless, DSL, and Voice over 1P.

17  43.  Micromuse's financial results for the third quarter of fiscal 2003, the period

18  ending June 30, 2003, were repeated in the Company's Report on Form 10-Q filed with the SEC

19  on or about August 13, 2003, which was signed by Defendants Carney and Luetkemeyer. In the

20  notes to the consolidated financial statements contained in the Form 10-Q, Defendants

21  represented that:

22  
23  
24  

The condensed consolidated financial statements are the unaudited historical financial statements of Micromuse Inc. and subsidiaries (the "Company") and reflect all adjustments (consisting only of normal recurring adjustments) that, in the opinion of management, are necessary for a fair presentation of interim period results.

25  
26  44.  On October 29, 2003, Micromuse issued a press release announcing its financial

27  results for the fourth quarter and year end of fiscal 2003, the period ending September 30, 2003.

28  For the year, pro forma net income, which specifically excludes the amortization of intangible

assets, the writeoff of in-process research and development, restructuring charges, and executive

recruitment costs, was $6.1 million or $0.08 per share. Net loss on a GAAP basis for fiscal 2003

was $4.1 million or $0.05 per share. Defendant Carney commented on the Company's

performance, stating, in pertinent part, as follows:

> Our strong Q4 results capped a fiscal year in which we increased revenue
> sequentially every quarter and delivered three consecutive quarters of pro forma
> and GAAP profitability. Throughout fiscal 2003, we significantly deepened our
> enterprise, government, and wireless presence, we expanded the Netcool suite
> through both internal product development and acquisitions, and we built
> increasingly strategic relationships with our valued customers, indirect channels,
> and technology partners. These achievements, plus our ongoing focus on
> managing expenses, create a strong foundation for continuing growth and
> profitability in fiscal 2004.

45.     The statements referenced above in ¶¶20-44 were each materially false and

misleading when made because they failed to disclose and/or misrepresented the following

adverse facts, among others: (i) that the Company had improperly accounted for the timing of

certain accrued expenses and the recognition of certain other expenses; (ii) that the Company

lacked adequate internal controls and was therefore unable to ascertain the true financial

condition of the Company; and (iii) that as a result, the values of the Company's net income and

financial results were materially overstated at all relevant times.

**II.     The Truth Emerges**

46.     On December 30, 2003, the Company shocked the market when it issued a press

release announcing, in pertinent part, that:

> [T]he filing of its Fiscal Year 2003 Form 10-K, due on December 29, 2003, will
> be delayed pending completion of an internal inquiry primarily regarding the
> accounting for accrued expenses and expense recognition. The Company expects
> that this inquiry will lead to a restatement of historical financial statements
> including adjustments to previously published financial results for fiscal years
> ending September 30, 2000, 2001, 2002, and 2003. The Company expects that
> these adjustments will affect reported earnings in certain periods and is in the
> process of quantifying the impact on the Company's historical financial
> statements. On a preliminary basis, the Company expects that these adjustments
> will result in a positive impact to earnings in certain periods and a negative
> impact in others.

47.     In a conference call with analysts that same day, Defendant Luetkemeyer stated

1   that during the Relevant Period, "we probably didn't grow our resources in financial control as

2   rapidly as we should have, and during the rapid cut back, we probably cut too fast and too far,

3   and some of the internal disciplines broke down." "Some of these activities go back into the

4   year 2000 . . .. With the enhancements we will be making in the financial controls and

5   processes, [we] fully expect that we would be able to find some of these errors that we have now

6   come across," Luetkemeyer added.

7         48.     During the Relevant Period, Defendants materially misled the investing public,

8   thereby inflating the price of Micromuse's common stock, by publicly issuing false and

9   misleading statements and omitting to disclose material facts necessary to make Defendants'

10   statements, as set forth herein, not false and misleading. Such statements and omissions were

11   materially false and misleading in that they failed to disclose material adverse information and

12   misrepresented the truth about the Company, its business and operations, as alleged herein.

13         49.     The undisclosed adverse information concealed by Defendants is the type of

14   information which, because of SEC regulations, regulations of the national stock exchanges and

15   customary business practices, is expected by investors, shareholders and securities analysts to be

16   disclosed and is known by corporate officials and their legal and financial advisors to be the

17   type of information which is expected to be and must be disclosed.

18         50.     Throughout the Relevant Period, the Defendants disseminated and/or approved

19   the false statements specified above, which they knew were misleading in that they contained

20   misrepresentations and failed to disclose material facts necessary in order to make the

21   statements made, in light of the circumstances under which they were made, not misleading.

22   Furthermore, the Director Defendants failed to discharge their responsibilities of oversight of the

23   Company's affairs. Because of the actions described herein, securities class actions have been

24   filed against the Company which have had the effect of impairing the Company's credibility in

25   the market place and elsewhere. Moreover, as a result of the Defendants' misconduct,

26   Micromuse is the subject of an informal SEC inquiry and estimates that it will incur

27   approximately $2 million in professional fees in the first quarter of fiscal 2004 in connection

28   with its own internal investigation of the Company's accounting improprieties. The Defendants'

1  malfeasance and/or misfeasance has exposed the Company to millions of dollars in liability to

2  investors in class action lawsuits which have been filed against the Company as well as current

3  investigatory and litigation expenses which will continue into the future.

4      51.   Moreover, certain of the Defendants sold their personally-held Micromuse

5  common stock to the unsuspecting public at artificially inflated prices while they were in the

6  possession of material non-public information about the Company. The following chart sets

7  forth the insider selling:

| Insider | Date of Sale | Number of Shares | Price per share | Value |
|---|---|---|---|---|
| Peter Shearan, Officer | 5/16/01–/5/31/01 | 200,000 | $37.90 - 49.48 | $7,580,000.00 |
| Stephen A. Allott, President | 8/28/01 | 30,000 | $12.05 | $361,500.00 |
| Michael Foster, Senior VP | 5/2/03 | 5,995 | $7.45 | $44,662.75 |
|  | 8/26/03 | 2,000 | $8.45 | $16,900.00 |
|  | 8/26/03 | 1,461 | $8.35 | $12,199.35 |
|  | 8/26/03 | 10,000 | $8.35 | $83,500.00 |
| **Total** |  | **19,456** |  | **$157,262.10** |
| Michael E.W. Jackson, Director | 5/7/03 | 20,000 | $8.26 | $165,200.00 |
|  | 5/28/03 | 20,000 | $9.34 | $186,800.00 |
| **Total** |  | **40,000** |  | **$352,000.00** |
| Michael Donohue, Senior VP | 5/5/03 | 75,000 | $7.62 | $571,500.00 |
|  | 8/25/03 | 22,223 | $8.40 | $8.40 |
|  | 8/25/03 | 16,667 | $8.40 | $140,002.80 |
|  | 8/25/03 | 11,108 | $8.40 | $93,307.20 |
|  | 8/25/03 | 25,002 | $8.40 | $210,016.80 |
|  | 11/3/03 | 5,000 | $8.20 | $41,000.00 |
|  | 11/4/03 | 8,333 | $8.62 | $71,830.46 |
|  | 11/4/03 | 5,555 | $8.62 | $47,884.10 |
|  | 11/4/03 | 56,112 | $8.62 | $483,685.44 |
| **Total** |  | **225,000** |  | **$1,659,235.20** |
| James Degolia, Senior VP | 5/7/03 | 15,000 | $8.00 | $120,000.00 |
| Greg Brown, Director | 5/5/03 | 50,000 | $7.90 | $395,000.00 |
|  | 5/6/03 | 25,000 | $7.55 | $188,750.00 |
|  | 5/9/03 | 15,000 | $8.06 | $8.06 |
|  | 5/13/03 | 25,000 | $7.98 | $199,500.00 |
|  | 5/15/03 | 75,000 | $8.14 | $610,500.00 |
|  | 5/1/03 | 60,000 | $7.97 | $478,200.00 |
|  | 5/27/03 | 158,900 | $8.92 | $1,417,388.00 |
|  | 8/25/03 | 9,900 | $8.41 | $83,259.00 |
|  | 8/25/03 | 13,333 | $8.42 | $112,263.86 |
|  | 8/25/03 | 35,542 | $8.42 | $299,263.64 |

| | 8/26/03 | 8,000 | $8.45 | $67,600.00 |
|---|---|---|---|---|
| | 8/27/03 | 8,490 | $8.41 | $71,400.90 |
| | 8/27/03 | 8,490 | $8.41 | $71,400.90 |
| | 8/28/03 | 25,700 | $8.24 | $211,768.00 |
| | 8/29/03 | 272,910 | $8.20 | $2,237,862.00 |
| **Total** | | **791,265** | | **$6,444,164.36** |
| Michael Luetkemeyer, CEO | 5/27/03 | 3,253 | $9.00 | $29,277.00 |
| | 5/28/03 | 25,914 | $9.18 | $237,890.52 |
| | 5/30/03 | 50,000 | $9.60 | $480,000.00 |
| **Total** | | **79,167** | | **$747,167.52** |

52.     The Company should not have to bear the enormous financial burdens caused by the actions of the Defendants who breached their fiduciary duties owed to Micromuse by issuing false and misleading financial statements for the Company and/or completely failing to discharge their oversight responsibilities.

53.     Further, the insider seller Defendants should be held accountable to the Company for the illegal profits they received from selling their shares during the Relevant Period while in possession of non-public adverse information concerning the Company's financial condition and business prospects.

## DEMAND EXCUSED ALLEGATIONS

54.     Plaintiff is an owner of Micromuse common stock and was an owner of Micromuse common stock during the period relevant to the Defendants' wrongful course of conduct alleged herein through the present.

55.     Micromuse's Board of Directors is currently composed of six (6) directors – Carney, Schwab, Luetkemeyer, Brown, Jackson and Wallman. Each of these Directors has been named as a Defendant in this case.

56.     Defendant Carney, an inside Director, owed a duty to Micromuse and its shareholders to be reasonably informed about the business and operations of the Company. As CEO and Chairman of the Board of Directors since July 2003, Carney also assumed important managerial responsibilities which required him to be well informed about the day-to-day operations of the Company. However, Carney breached these duties by actively participating in, encouraging, sponsoring, and/or approving many of the wrongful acts or omissions complained

of herein and/or purposely or recklessly disregarding these wrongful acts or omissions. Moreover, if Carney were to sue the other Defendant Directors, it would jeopardize his position as CEO of the Company and the substantial financial benefits which accrue to him pursuant to same.

57.    Defendant Luetkemeyer, an inside Director, has been a Director of the Company since 2003. Luetkemeyer was Senior Vice President and Chief Financial Officer of the Company from October 2001 until January 1, 2003 when he was appointed interim Chief Executive Officer. He held that position until July 28, 2003. Luetkemeyer has served as the Company's Chief Financial Officer throughout his tenure with the Company. Luetkemeyer owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company and particularly its accounting practices and its financial and accounting controls. As CEO and CFO and a member of the Board of Directors, Luetkemeyer also assumed important managerial responsibilities which required him to be well informed about the day-to-day operations of the Company. Luetkemeyer breached these duties by actively participating in, encouraging, sponsoring and/or approving many of the wrongful acts or omissions complained of herein and/or purposely or recklessly disregarding these wrongful acts or omissions. In addition, Luetkemeyer engaged in unlawful insider trading during the Relevant Period, reaping proceeds of $747,000. Finally, in 2002 Luetkemeyer received as compensation from the Company, a salary of $250,000, a bonus of $131,250 and stock options to purchase 400,000 shares of the company's stock.[1] Luetkemeyer's position with the Company and the substantial compensation he receives from same would be jeopardized if he were to vote to institute legal proceedings against the other Defendant directors.

58.    Defendant Brown, an inside Director served as Chairman of the Board and CEO of the Company from February 1999 until December 2002. He currently serves as a Director of the Company. Brown owed the Company and its shareholders a duty to be reasonably informed about the business and operations of the Company. As CEO and Chairman of the Company, Brown also assumed important managerial responsibilities which required him to be well

---

[1] Information concerning Luetkemeyer's 2003 compensation is not currently available.

1    informed about the day-to-day operations of the Company. However, Brown breached these
2    duties by actively participating in, encouraging, sponsoring and/or approving many of the
3    wrongful acts or omissions complained of herein and/or purposely or recklessly disregarding
4    those wrongful acts or omissions. In addition, Brown engaged in wrongful insider trading
5    during the Relevant Period, reaping proceeds of $6.4 million.

6    59.    Defendant Jackson has been a Director of the Company since July 1998. He has
7    also been a Director of the Company's subsidiary, Micromuse, PLC since March 1994. Jackson
8    engaged in unlawful insider trading during the Relevant Period reaping proceeds of $352,000.
9    Defendant Jackson was a member of the Company's Audit Committee during the Relevant
10   Period and as such he had a duty to insure that Micromuse had adequate internal accounting
11   procedures and controls necessary to insure that the Company's financial statements complied
12   with GAAP. However, Jackson breached these duties by actively participating in, encouraging
13   sponsoring, approving and/or failing to prevent many of the wrongful acts or omissions
14   complained of herein and/or purposely or recklessly disregarding these wrongful acts or
15   omissions.

16   60.    Defendant Wallman has been a Director of the Company since 1999 and was a
17   member of the Company's Audit Committee during the Relevant Period. As a member of the
18   Audit Committee, she had a duty to insure that the Company had adequate internal accounting
19   procedures and controls necessary to insure that the Company's financial statements complied
20   with GAAP. However, Wallman breached these duties by actively participating in, encouraging
21   sponsoring, approving and/or failing to prevent many of the wrongful acts or omissions
22   complained of herein and/or purposely or recklessly disregarding these wrongful acts or
23   omissions.

24   61.    Defendant Schwab has been a Director of the Company since 1996 and was a
25   member of the Company's Audit Committee during the Relevant Period. From January 1, 2003
26   until July 29, 2003, Schwab served as the Chairman of the Board of Directors. As a member of
27   the Audit Committee, he had a duty to insure that the Company had adequate internal
28   accounting procedures and controls necessary to insure that the Company's financial statements

SHAREHOLDERS DERIVATIVE COMPLAINT                                                              20

1   complied with GAAP. However, Schwab breached these duties by actively participating in,

2   encouraging sponsoring, approving and/or failing to prevent many of the wrongful acts or

3   omissions complained of herein and/or purposely or recklessly disregarding these wrongful acts

4   or omissions.

5       62.   Demand on the Micromuse Board of Directors to institute this action is not

6   necessary because such a demand would be a futile and useless act, particularly for the

7   additional following reasons:

8           a.   A majority of the Directors of Micromuse, as detailed herein, participated
                 in, approved and/or permitted the wrongs alleged herein to have occurred
9                and participated in efforts to conceal or disguise those wrongs from
                 Micromuse stockholders and investors and are, therefore, not
10               disinterested parties and thus could not fairly and fully prosecute such a
                 suit even if such suit was instituted by them;
11

12          b.   A majority of the Directors had a responsibility and obligation to assure
                 that all press releases and filings of SEC reports, including all financial
13               reports, were accurate and that all financial controls and other oversight
                 procedures were in place that would have detected and prevented the false
14               and misleading statements put out by the Company to the public that are
                 further described in this Complaint;
15

16          c.   In order to bring this suit, a majority of the Directors of Micromuse would
                 be forced to sue themselves and/or persons with whom they have
17               extensive business and personal entanglements, which they will not do,
                 thereby excusing demand;
18

19          d.   The acts complained of constitute violations of state law and the fiduciary
                 duties owed by Micromuse officers and directors and are incapable of
20               ratification;

21          e.   The actions of the Directors has impaired the Board's ability to validly
                 exercise its business judgment and rendered it incapable of reaching an
22               independent decision as to whether to accept Plaintiff's demands;

23
            f.   Defendants Brown, Luetkemeyer and Carney are currently defendants in
24               numerous securities class action lawsuits arising out of the wrongdoing
                 alleged herein and a suit by them to remedy the wrongs alleged herein
25               would likely expose them to liability in the securities class actions; thus
                 they are hopelessly conflicted in making any supposedly independent
26               determination as to whether to sue themselves and the other Defendant
                 Directors;
27

28

g.     Micromuse has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein; yet, the Director Defendants have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct, nor have they attempted to recover any part of the damages Micromuse suffered and will suffer thereby any of the illegal profits received by the insider seller Defendants;

h.     If the Defendant Directors were to bring this derivative action against themselves, they would thereby expose their own negligence and misconduct which underlies allegations against the Company contained in the class action complaints for violations of federal securities law.  Such admissions would impair the Company's and their defense of the Class Actions and greatly increase the probability of their personal liability in the Class Actions in an amount likely to be in excess of any insurance coverage available to the Director Defendants;

i.     The Director Defendants are believed to be covered by an insurance policy which covers the type of misconduct alleged herein, which policy would likely preclude coverage, if any, if the Director Defendants initiated action against any of the other Director Defendants named herein.  Therefore, the Micromuse Board, and any committee thereof, is effectively disabled from complying with any demand that would cause the Company to bring suit against the Defendants because to do so would result in the loss of their insurance coverage.

63.     Plaintiff has not made any demand on the shareholders of Micromuse to institute this action since such demand would be a futile and useless act for the following reasons:

a.     Micromuse is a publicly traded company with thousands of shareholders;

b.     Making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or telephone numbers of shareholders; and

c.     Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could even be individually identified.

64.     Plaintiff will adequately and fairly represent the interests of Micromuse in enforcing and prosecuting its rights.

### COUNT I

### DERIVATIVE CLAIM AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY

65.     Plaintiff incorporates by reference and realleges each of the foregoing allegations, as though fully set forth herein.

SHAREHOLDERS DERIVATIVE COMPLAINT                              22

66.     The Defendants breached their fiduciary duties to the Company and its shareholders by failing in their responsibility to maintain adequate accounting controls and by employing improper accounting and audit practices and procedures, as specified, *supra*, resulting in the Company's violations of GAAP, which artificially inflated the value of the Company's common stock by overstating Micromuse's financial results and resulting in numerous class action lawsuits against the Company, an informal SEC investigation and impairing the Company's reputation in financial markets and its ability to secure needed capital.

67.     The Defendants owed a fiduciary duty to Micromuse to supervise the issuance of its press releases and public filings to ensure that they were truthful and accurate and that they conformed with federal and state securities law. The Defendants breached their fiduciary duties by failing to properly supervise and monitor Micromuse's accounting practices and the adequacy of its internal financial controls and audits and by allowing misleading statements and filings to be issued and made.

68.     The Defendants have engaged, knowingly or recklessly, in a sustained and systemic failure to exercise their oversight responsibilities to ensure that Micromuse complied with federal and state laws, rules and regulations and with GAAP and to ensure the integrity of its financial reporting.

69.     The Form 10-Ks and 10-Qs filed by Micromuse with the SEC and containing false and misleading financial information were each signed by certain of the Defendants as alleged herein. Each of these Defendants, therefore, had a heightened responsibility to ensure the integrity of these public filings.

70.     As members of the Board of Directors of Micromuse, the Director Defendants were directly responsible for authorizing or permitting the authorization of, or failing to monitor, the practices which resulted in violations of the federal securities laws as alleged herein. Each of them had knowledge of and actively participated in and/or approved of or acquiesced in the wrongdoings alleged herein or abdicated his/her responsibilities with respect to these wrongdoings. The alleged acts of wrongdoing have subjected Micromuse to unreasonable risks of loss and expenses.

71.     Each of the Defendants knew, or in the absence of recklessness should have known, that the Company was reporting false and materially misleading information to the public, shareholders, and the SEC.  Each of the Defendants knowingly participated in or permitted a continuing course of conduct in which false and wrongful accounting procedures formed the basis for the Company's reports to the public, shareholders, and the SEC.

72.     Each of the Defendants' acts in causing or permitting the Company to file with the SEC and to disseminate to the investing public material misrepresentations and omissions concerning Micromuse's revenues, income, and supposed compliance with accounting rules and regulations has subjected the Company to liability for violations of federal and state law, and therefore was not the product of a valid exercise of business judgment and was a complete abdication of their duties as officers and directors of the Company.  As a result of the Defendants' breaches, Micromuse is the subject of major securities fraud class action lawsuits by defrauded investors, an SEC inquiry, has had its reputation in the business community and financial markets irreparably tarnished, and has thus been damaged.

### COUNT II

### MISAPPROPRIATION OF CONFIDENTIAL INFORMATION FOR PERSONAL PROFIT ON THE PART OF INDIVIDUAL DEFENDANTS BROWN. LUETKEMEYER AND JACKSON

73.     Plaintiff repeats and realleges each and every allegation contained above with the same force and effect as though fully set forth therein.

74.     The selling Defendants Brown, Luetkemeyer and Jackson, at all times relevant hereto, occupied fiduciary positions with Micromuse that made them privy to confidential material inside information concerning Micromuse and its operations, including the wrongful accounting practices alleged herein, senior management's knowledge thereof, and Micromuse's resulting exposure to injury and liability.

75.     Notwithstanding their duty to Micromuse to refrain from trading in Micromuse common stock on the basis of adverse material non-public information, these Defendants directed the sale of Micromuse stock and thereby profited.

1    76.    The selling Defendants sold their shares of Micromuse stock with knowledge of
2  the wrongful accounting practices alleged herein. At the time they made such sales, they knew
3  they were in possession of such confidential material inside information which was not known
4  to the general investing public.

5    77.    By reason of their breach of their fiduciary duties to Micromuse not to trade on
6  confidential material inside information, the selling Defendants must account and are liable to
7  Micromuse for any and all profits unlawfully derived from such trades.

8                                    **COUNT III**

9                      **CONTRIBUTION AND INDEMNIFICATION**

10    78.    Plaintiff repeats and realleges each and every allegation set forth above.
11  Micromuse is alleged to be liable to various persons, entities and/or classes by virtue of the same
12  facts or circumstances as are alleged herein to give rise to Defendants' liability to Micromuse.

13    79.    Micromuse's alleged liability on account of the wrongful acts and practices and
14  related misconduct described above arises, in whole or in part, from the knowing, reckless,
15  disloyal and/or bad faith acts or omissions of the Defendants as alleged above, and Micromuse
16  is entitled to contribution and indemnification from each of the Defendants in connection with
17  all such claims that have been, are or may in the future be asserted against Micromuse by virtue
18  of the Defendants' misconduct.

19         **WHEREFORE**, Plaintiff demands judgment as follows:

20    A.    Directing the Defendants to account to the Company for all damages sustained or
21  to be sustained by the Company by reason of the wrongs alleged herein;

22    B.    Requiring the Defendants to return to Micromuse all salaries and the value of
23  other remuneration of whatever kind paid to them by the Company, and all proceeds of all
24  illegal stock sales, during the time they were in breach of the fiduciary duties they owed to
25  Micromuse;

26    C.    Directing the Defendants to pay interest at the highest rate allowable by law on
27  the amount of damages sustained by the Company as a result of Defendants' culpable conduct;

28

1      D.      Awarding Plaintiff the costs and disbursements of this action, including

2  reasonable attorneys' and experts' fees and expenses; and

3      E.      Granting such other and further relief as the Court may deem just and proper.

4                          **JURY DEMAND**

5      Plaintiff demands a trial by jury.

6

7  DATED:  March 4, 2004                Respectfully submitted,

8                          **GREEN & JIGARJIAN LLP**

9

10                          By: _____

11                              Robert S. Green

12                          235 Pine Street, 15th Floor
                              San Francisco, CA  94104

13                          Telephone:  (415) 477-6700
                              Facsimile:  (415) 677-6710

14

15                          - and -

16                          William B. Federman, Esq.
                          **FEDERMAN & SHERWOOD**

17                          120 N. Robinson, Suite 2720
                          Oklahoma City, OK 73102

18                          Telephone (405) 235-1560/Fax (405) 239-2112

19

20                          -and-

21                          2926 Maple Avenue, Suite 200
                          Dallas, TX 75201

22

23

24

25

26

27

28

SHAREHOLDERS DERIVATIVE COMPLAINT                      26

## **VERIFICATION**

I, declare that I have reviewed the Derivative Complaint ("Complaint") prepared on behalf of Micromuse, Inc. and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of Micromuse, Inc. common stock during the time in which the wrongful conduct alleged and complained of in the Complaint was occurring through the present.

GREG SUTTERFIELD